## HAWKEYE SECURITIES INS. CO. v. CA-SHION et al. (No. 1012–4897.)

Commission of Appeals of Texas, Section A.
Nov. 30, 1927.

**1. Trial** ⟨⟩**351(2)—Trial court could not find total fire loss where requested issue of salvage was refused (Rev. St. 1925, art. 2190).**

Where, in an action to recover on a fire insurance policy for furniture loss, special·issues were submitted relative to the value of the furniture in the building on the day of the fire, but no issue was submitted, although requested, upon the matter of salvage, *held*, that Rev. St. 1911, art. 1985 (Rev. St. 1925, art. 2190), gave the trial judge no authority to find total loss and render judgment therefor.

**2. Appeal and error** ⟨⟩**930(3)—Refusal to submit issue of partial loss, as well as evidence indicating some salvage, held to preclude presumption of total loss in support of judgment on fire policy (Rev. St. 1925, art. 2190).**

Where, in an action on a fire insurance policy for furniture loss, there was no evidence of total loss, and the court failed to submit, although requested, an issue of partial loss or furniture salvage, *held*, that the reviewing court was precluded, under Rev. St. 1911, art. 1985 (Rev. St. 1925, art. 2190), from presuming total loss in support of judgment.

Error to Court of Civil Appeals of Eleventh Supreme Judicial District.

Action by Mrs. Velma Cashion and husband against the Hawkeye Securities Insurance Company. A judgment for plaintiffs was affirmed by the Court of Civil Appeals (293 S. W. 664), and defendant brings error. Judgments of the district court and of the Court of Civil Appeals. Reversed and cause remanded.

E. G. Senter, of Dallas, for plaintiff in error.

Barker & Orn, of Cisco, for defendants in error.

NICKELS, J. On a former appeal (278 S. W. 298) the Court of Civil Appeals, Eleventh district, reversed a judgment in favor of the Cashions and remanded the cause for error in rendition of judgment upon the special issues submitted (copied in full in the opinion cited) and in refusing submission of a special charge requested by the Insurance Company.

In the new trial issues Nos. 1, 2, 3, and 4 were submitted and answered as in the former trial. Issue No. 5 was slightly changed so as to read thus:

"What was the reasonable value of the property, owned by plaintiffs, damaged or destroyed by fire on December 24, 1923, in the building then occupied by the plaintiff, just prior to the fire?"

—and the jury's answer was "$1,859.90." An additional issue (No. 6) was submitted in the new trial in this form:

"Was any part of the household goods described in the policy sued on herein owned by the plaintiffs damaged only by smoke and water on December 24th, 1923?"

To this issue the jury answered "No." The Insurance Company duly requested and the court refused submission of an issue reading:

"What was the reasonable cash value after the fire of the household goods, clothing, furniture, etc., belonging to the Cashions, situate in the house at the time of the fire, and which remained there after the fire?"

Error was duly assigned, inter alia, in rendition of judgment on a verdict which "fails to establish the actual damages caused by the fire" and in the refusal of submission of the "issue" tendered, but these and other objections were overruled and the judgment was affirmed by the Court of Civil Appeals, same district. 293 S. W. 664. Writ of error was allowed principally upon asserted conflict in the two decisions and upon a petition advancing the same assignments.

In special issue No. 5 the inquiry has sole relation to values pre-existent the fire and in respect to property either "destroyed" or "damaged by fire." The issue is not confined to value of property totally lost, but it proceeds upon an assumption that there was or may have been left property which was merely "damaged by fire." The jury's answer implies a like fact or possibility.

Special issue No. 6 has a narrow range. Therein the jury was asked whether "any part of the household goods" "was * * * damaged only by smoke and water." The fact, or possibility, of goods "damaged by fire," or by "fire and water," or by "fire and smoke," was not inquired about or determined.

It results that the matter of total loss was not passed to (or upon by) the jury. The judgment, however, proceeds upon the theory of such a loss, and the basic question, truly presented, is whether there was authority in the district judge to supply the essential findings or in the appellate courts to presume them in support of the judgment. Article 1985, R. S. 1911; article 2190, R. S. 1925.

[1] The honorable Court of Civil Appeals committed error of fact in its declaration that "plaintiff's witnesses testified to a total loss of all the property covered by this insurance policy." The witnesses to whom reference was thus made are Mrs. Cashion and Mrs. Wilson.

About the property en masse Mrs. Cashion said:

"This property that I have described burned up, and what was not burned up was damaged to such an extent that I could not use it. * * * There was not anything to salvage; there was not anything I could use."

In respect to that part of the property in the "dining room," "kitchen," and "pantry," she said it was "all burned up," except the "kitchen stove," was badly damaged, and the crockery, glassware, etc., was broken. In "the front bedroom," she said, there "was no fire" (except where a "hole was burned in one corner"), but the "property in that room" (consisting of "bed," "heating stove," "dresser," and "sewing machine") "was soaked with water and smoked and the heat cracked the mirror in the dresser." The "living room" contained an "Axminster rug," "library table," "rocker," "one arm chair," "one straight chair," "magazine stand," and "heating stove," according to her version, and "some fire got into the living room and the fine quarter-sawed oak furniture was all warped and charred and the Axminster rug was burned in several places." There was another room in the house, but she did not specifically testify about its contents.

Mrs. Wilson was not at the house until "about a week after the fire." At that time, she said, she and Mrs. Cashion "went down and sealed the windows up to keep people from carrying things out of the old burned rooms, * * * there had been hundreds of people going through there." Whether she made inspection at that time is not shown. In "February or March" afterward Mr. and Mrs. Wilson (who owned the house) removed what had been left. According to her testimony, she then "burned what was left" of the "Axminster rug"; found "two old table legs" of the "dining room suite" and "three mattresses * * * not burned, but *. * * water soaked and smoked badly"; observed the "sewing machine all burned and rusted and· ruined," the "bedsteads * * * all black," the "cook stove * * * not all gone, but * * * all rusted up," the "cot * * * of steel and * * * not burned," the "gas. heaters * * * just water soaked," the "quilts, blankets, sheets, or counterpanes * * * all water soaked and just smoked badly and mildewed and stuck together," and "lots of old pieces of dresses * *. * with part burned off, but none of any value," etc. In general, she ·said that "some of this stuff that was left in that house, if it had been looked after immediately after the fire, could have been used for some purpose, or might have been if it had been looked after the next day, but the bed clothes were all mildewed and ruined," "the cloth, being smoked, could not have been used by her," and that the "mattresses could not have been dried out and used again as they were all water soaked and mildewed and stuck together."

There is in the testimony of Mrs. Cashion and Mrs. Wilson elaboration, but not contradiction, of the statements excerpted, and those statements negative "total loss," at least in the absolute sense. Their testimony as to lack of value is so especially conditioned upon value to themselves as to fall short of evidence preclusive of value to others. The Court of Civil Appeals is correct in its statement that "defendant's witnesses· testified that there were various articles of furniture and clothing which were not a total loss," and it might have gone further and properly have said that this testimony related to many of the articles which had much original value.

[2] With the evidence and the "judgment roll" in the condition shown,·the statute mentioned projects two reasons preclusive of authority in the judge to make a finding of total loss and of authority in the appellate courts to presume that finding. A prerequisite of that authority is evidence to support the.finding; another is absence of remitter and·of a request for remitter of the material issue to the jury; and both essentials have negation in this record, in consequence of which the trial judge was without one of the factors necessary to the calculation of the amount to which the plaintiffs were entitled as made issuable by the general denial of the averments of the petition. See German Inc. Co. v. Everett, 18 Tex. Civ. App. 514, 46 S. W. 95, and former opinion in this case (Tex. Civ.·App.) 278 S. W. 298.

Other questions are presented, but conclusions already stated make their consideration nonessential. In view of a new trial it ought to be observed, however, that the. matter of salvage should be cared for in the charge, if the evidence does not conclusively show a total loss.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed, and that the cause be remanded.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.